## CAPITAL AIRLINES, Inc. v. UNITED STATES.

No. 524–52.

United States Court of Claims.

July 13, 1953.

642

Charles H. Murchison, Jacksonville, Fla., Stockton, Ulmer & Murchison, Jacksonville, Fla., on the brief, for plaintiff.

Gilbert E. Andrews, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff, an air carrier, sues the defendant for the sum of $184,701.12 for mail pay to which it claims it is entitled under the order of the Civil Aeronautics Board establishing the rate of mail pay to be paid it by the Postmaster General. The case is before us on motions by the parties for summary judgment.

On August 18, 1949, the Civil Aeronautics Board entered an order, No. E–3157, fixing the mail pay to be paid plaintiff for the period beginning January 14, 1947 and ending December 31, 1948, in the sum of $9,-031,595, and thereafter, beginning on January 1, 1949, at a rate provided for in that order.

Subsequently, on October 1, 1951, the Board instituted a proceeding for the fixing of a mail rate to be effective thereafter, and on the 19th day of December 1951, under order No. E–5955, it fixed a rate ef-fective from and after that date. From the amount accruing under this latter order the Postmaster General has withheld the total sum of $184,701.12, which he says is deductible from the amount of mail pay paid plaintiff under order E–3157 from January 1, 1949 to October 1, 1951. This is because the formula established by order E–3157 resulted in "negative mail pay" for the months of June, August and September. This means that under the formula therein set out the plaintiff was obligated to refund some part of the amounts received in previous months under the order.

Plaintiff's position is that it was beyond the power of the Civil Aeronautics Board to require it to refund any portion of the amounts already paid it. Plaintiff expressly disavows an intention to request us to interpret order E–3157 of the Civil Aeronautics Board, or to review that order in any way. It impliedly admits, so far as this proceeding is concerned, the correctness of the Board's interpretation of the order and its validity, if the Board had the power to enter it. It rests its case alone on the proposition that the Board had no power to enter an order which required the plaintiff to refund to the Postmaster General any amount of mail pay previously paid it. That is the sole issue before us.

Plaintiff says that order No. E–3157 provided for the payment to it of mail pay on the basis of each month of operation, and not on a yearly basis, or on any basis other than a monthly basis. It, therefore, says that, if in a subsequent month no mail pay accrued to it under the Board's order, but, instead, the formula prescribed by the order resulted in a refund due the Government by plaintiff, the Postmaster General, nevertheless, was not authorized to offset this so-called "negative mail pay" against amounts paid it for previous months.

The correctness of this position depends altogether on the proposition that the rates fixed by the Civil Aeronautics Board, under its order No. E–5955, were on a monthly basis and were not on an annual basis, or on any basis other than a monthly basis. This position, however, cannot be sustained, because the Civil Aeronautics Board has interpreted this order E–3157 as fixing the

rates on an annual basis rather than on a monthly basis.

Since plaintiff does not contest the correctness of the interpretation of this order, we are obliged to treat the order as fixing the mail pay on an annual basis rather than on a monthly basis. This would mean, of course, that the mail pay to which plaintiff was entitled under this order E–3157 would be computed for the entire year or longer period. Therefore, from the months in which amounts had accrued to plaintiff there must be deducted any amounts of "negative mail pay" which accrued in other months.

This interpretation of the Board was issued in a proceeding brought by plaintiff in which plaintiff asked for an amendment of order E–3157 *nunc pro tunc,* so as to eliminate the requirement for plaintiff to pay back to the Postmaster General any sum paid to it within a previous month. The Board refused to so amend its order, on the ground that that order had fixed the rates of mail pay on an annual basis, and not on a monthly basis, and that on an annual basis the order required that a balance be struck at the end of the year, crediting plaintiff with the amounts accruing in the months in which the formula produced an indebtedness in plaintiff's favor, and charging it with the amounts accruing in the months in which the formula produced amounts in the Government's favor.

We quote the following from the order of the Board in this proceeding, being No. E–5746:

"The difficulty with Capital's argument is that (1) it overlooks the fact, contrary to its assertions, that the same type formula has been utilized in outstanding orders concerning nine other domestic air carriers,[6] and, more important, it attempts to establish inadvertence or clerical error on the basis of results for a specific month or months, whereas, in our view, the issue presented must be determined on the basis of the operation of the formula over at least an annual period.

"Mail rates are not determined on a monthly basis to meet a subsidy carrier's varying requirements, depending essentially upon seasonal fluctuations, for a particular month or months. Rather, as is plain from even a cursory perusal of the April 1, 1949 Tentative Statement, Capital's rate was determined on the basis of its need for an annual period.[7] The formula is merely an expression of these requirements in terms of a monthly rate, so that the carrier need not await the lapse of a year to receive payment.

"The sliding scale mail rate formula, of which Capital's is not atypical, has as its over-all objectives (1) the production during any given annual period of that amount of mail pay which will yield a domestic carrier which requires subsidy the customary rate of return on investment (after taxes) under conditions as forecast, and (2) an increasingly greater return as management achieves economies in cost and improves its nonmail revenue position.

---

6. The formula was adopted in the Mid-Continent case (Order E–2755, April 28, 1949) processed prior to Capital's case, and has been used consistently in all appropriate cases, including the following: All American Airways, Order E–5555, adopted July 30, 1951; Caribbean Atlantic Airlines, Order E–5279, adopted April 12, 1951; Continental Airlines, Inc., Order E–4266, adopted May 31, 1950; Piedmont Aviation, Order E–5185, adopted March 12, 1951; Pioneer Air Lines, Order E–4613, adopted September 15, 1950; Southwest Airways Co., Order E–5463, adopted June 21, 1951; Trans-Texas Airways, Order E–4614, adopted September 15, 1950; and West Coast Airlines, Order E–4376, adopted June 29, 1950.

"* * * This formula was adopted to cure certain deficiencies in the prior Chicago and Southern type formula."

7. See e. g., 10 C.A.B. 705, 725, 733, 734, from which it is evident that Capital's mail rate, as is true generally of all such rates for a future period, was fixed on the basis of estimated break-even need plus a return on investment for a future yearly period—not for a month or specific months.

These were the stated objectives of the formula under discussion. This formula has attained those objectives.[8]

This is evident from the table below showing Capital's earnings under the rate order since its inception:

| 12 months ended— | Mail pay | Net operating income | Invest-ment | Taxes | Return | Mail pay per mail ton-mile |
|---|---|---|---|---|---|---|
| | (000 omitted) | (000 omitted) | (000 omitted) | Percent | Percent | |
| 12-31-49 ............. | $4,567 | $1,319 | [1] $5,561 | 38 | 17.23 | $4.28 |
| 12-31-50 ............. | 3,817 | 2,237 | 11,364 | 42 | 12.37 | 2.49 |
| 3-31-51 ............. | 3,119 | 2,585 | 11,364 | 42 | 14.15 | 1.90 |
| 6-30-51 ............. | [2] 2,552 | [2] 3,077 | 11,364 | 44.5 | 15.84 | 1.44 |

[1] Investment as of June 30, 1949 used for 1949. Investment as of 12-31-50 used for years ended 12-31-50, 3-31-51, and 6-30-51.
[2] Reflects negative mail pay for June 1951.

"The fact that negative mail pay results in a given month or months is, thus, not indicative of any error which could form the basis for the relief requested.[11] The result contemplated in our Statement, which was predicated upon annual earnings of seven percent, has not only been achieved but surpassed under the terms of the formula in the rate order which gives effect to that Statement. The formula prescribed in the rate order was completely in accord with the findings and determinations in the Tentative Statement; and in no manner the product of inadvertence or clerical error."

Undoubtedly the Civil Aeronautics Board had the right to issue an order fixing the mail pay to be paid plaintiff on an annual basis. It had as much right to do this as it did to fix the rate on a monthly basis.

The Board says it did fix the rate on an annual basis. This being so, then the "negative mail pay" is to be deducted from the pay accruing to plaintiff in prior months.

It results that plaintiff's motion for summary judgment must be dismissed, and defendant's motion for summary judgment must be granted, and plaintiff's petition must be dismissed.

Defendant files a counterclaim based upon the contingency that the court might declare the Board's order No. E-3157 void insofar as it provided for "negative mail pay." Since this contingency has not arisen, defendant's counterclaim must also be dismissed.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and LITTLETON, Judges, concur.

8. If the carrier had become self-sufficient and if the mail rate had begun to yield an amount less than a compensatory rate on an annual basis, the carrier could have, of course, invoked our power to establish a service rate for future operations.

11. In Inland Airlines, Inc., and Western Air Lines, Inc. Mail Rates, Docket No. 2870 et al., Order No. E-5467, June 26, 1951, we rejected a related contention that the rate there should take effect for the period 1946-1948, excluding a prior 20-month period since the date of petition, the carrier claiming that inclusion of the 20 months would result in its paying the Government for carrying the mail. Our decision was based on the ground that the effect of a rate should not be looked at through a keyhole, but with due regard to the over-all result during the entire period of its operation. That principle obtains equally here.